IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:20CR340-2 |
| | : | |
| JOSEPH MARSELL CARTLIDGE | : | |

FACTUAL BASIS FOR A GUILTY PLEA

NOW COME the United States of America, by and through Sandra J. Hairston, Acting United States Attorney for the Middle District of North Carolina, and Joseph S. Beemsterboer, Acting Chief, Criminal Division, Fraud Section, and state that the factual basis for a guilty plea is as follows:

Background

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law in response to the economic fallout of the COVID-19 pandemic in the United States. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

1

In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (i) average monthly payroll expenses; and (ii) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

Another source of relief provided by the CARES Act was the expansion of the Economic Injury Disaster Loan ("EIDL") program administered by the United States Small Business Administration ("SBA"), an agency of the

2

executive branch of the United States Government. Specifically, the CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing financial disruption due to the COVID-19 pandemic. The CARES Act also authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. The applicant was also required to certify that all of the information in the application is true and correct to the best of the applicant's knowledge. EIDL funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

## PPP Conspiracy and Scheme to Defraud

From at least in or around May 2020, continuing up to and including in or around June 2020, the defendant, JOSEPH MARSELL CARTLIDGE, David Christopher Redfern, Eric Alexander McMiller, Jesse Kendall Griffin, and

others, knowingly and intentionally conspired to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by submitting and causing to be submitted false and fraudulent loan applications in order to obtain funds through the PPP.

During the course of the investigation, investigators interviewed a confidential human source ("CHS 1") regarding CHS 1's involvement in the PPP scheme. CHS 1 told investigators that CHS 1 used intermediaries to recruit individuals to apply for false and fraudulent PPP loans and, in return for preparing PPP loan application documentation for such individuals, sought a portion of the fraudulently obtained loan proceeds. CARTLIDGE, Redfern, McMiller, and Griffin each communicated with CHS 1 through one or more intermediaries and agreed to participate in the scheme and conspiracy.

CARTLIDGE, Redfern, McMiller, and Griffin each utilized registered businesses and claimed false business operations in furtherance of the fraud scheme. CARTLIDGE, Redfern, McMiller, and Griffin also utilized or attempted to utilize business and personal bank accounts at various financial institutions for the purpose of receiving fraudulent loan proceeds. In furtherance of the scheme, CARTLIDGE, Redfern, McMiller, and Griffin provided information, including personal and business identifying

4

information, to CHS 1 through one or more intermediaries in order to seek PPP loans. CHS 1 then used such information to prepare and cause to be prepared false and fraudulent supporting documentation, including bank account statements and tax filings, for PPP applications on behalf of CARTLIDGE, Redfern, McMiller, and Griffin.

During the course of the conspiracy, CARTLIDGE caused the submission of two fraudulent PPP applications. Specifically, on or about June 1, 2020, CARTLIDGE caused the submission of a PPP application seeking a loan in the amount of $403,120 in the name of Company 1, a company registered with the North Carolina Secretary of State on or about January 13, 2020 and listing Individual 1 as the registered agent and owner. Prior to submitting the Company 1 PPP Application, CARTLIDGE opened a business account in the name of Company 1 with Individual 1 as the purported authorized signer ("Company 1 Account").

CARTLIDGE provided the name and other personal identifying information of Individual 1 to complete the Company 1 PPP Application. The Company 1 PPP Application appended as supporting documentation: (i) a false and fraudulent purported IRS Form 941 for the first quarter of 2020 showing $483,746.04 paid in wages to twenty-four employees and purportedly signed by Individual 1 and (ii) a false and fraudulent bank account statement for

5

Company 1 dated February 27, 2020, showing a balance of $290,028.70. At the time the Company 1 PPP Application was submitted, Individual 1 was incarcerated in correctional facilities in North Carolina. Moreover, Individual 1 was unaware that CARTLIDGE sought PPP funds in the name of Company 1 using Individual 1's identifying information.

In addition, on or about June 2, 2020, CARTLIDGE caused a PPP application seeking a loan in the amount of $463,530 in the name of LBRNO LLC ("LBRNO"), a company that was registered with the North Carolina Secretary of State on or about December 29, 2016 listing CARTLIDGE as the registered agent and owner. In the LBRNO PPP Application, CARTLIDGE falsely affirmed or caused to be falsely affirmed, among other information, that LBRNO had twenty-three employees and an average monthly payroll of $185,412. The LBRNO PPP Application appended as supporting documentation: (i) false and fraudulent purported IRS Forms 941 for all four quarters of 2019 showing $556,237.44 paid in wages to twenty-three employees per quarter; and (ii) a false and fraudulent bank statement for LBRNO dated February 27, 2020, showing a balance of $290,028.70.

As a result of these false and fraudulent PPP applications, CARTLIDGE caused the disbursement of PPP funds in the requested loan amounts. Upon receiving the PPP funds, CARTLIDGE subsequently transferred, caused to be

6

transferred, and attempted to transfer fraudulently obtained PPP loan proceeds to accounts under his co-defendants' control, and used PPP loan proceeds for his personal benefit, and for the benefit of others.

With respect to the Company 1 PPP Application, on or about June 2, 2020, $403,120 in PPP funds were deposited into the Company 1 Account. The following day, on or about June 3, 2020, CARTLIDGE attempted to make two wire transfers in the amount of $75,000 each to accounts controlled by Redfern and Griffin. In addition, on June 10, 2020, McMiller attempted to deposit a $250,000 check drawn from the Company 1 Account and purportedly signed by Individual 1 into an account controlled by McMiller.

With respect to the LBRNO PPP Application, on or about June 3, 2020, $463,530 in PPP funds were deposited into an account in the name of LBRNO controlled by CARTLIDGE ("LBRNO Account). Between June 3, 2020 and June 19, 2020, CARTLIDGE withdrew approximately $454,000 via cash and cashier's check from the LBRNO Account. CARTLIDGE also made numerous debit card purchases in late June, including from Louis Vuitton, Neiman Marcus, Gucci, and a yacht and boat rental company. Records obtained from Instagram reveal that CARTLIDGE and McMiller tagged each other in various photographs and/or Instagram stories during this time period. These

photographs and videos show CARTLIDGE and McMiller with large amounts of cash and/or making luxury purchases.

Over the course of the conspiracy, CARTLIDGE, Redfern, McMiller, and Griffin, collectively sought to fraudulently obtain $2,326,874 in PPP funds. All of the relevant disbursements and subsequent transfers were made by means of interstate wire to bank accounts controlled by CARTLIDGE and his co-defendants.

EIDL Scheme to Defraud

CARTLIDGE also devised a scheme to defraud by submitting and causing to be submitted false and fraudulent loan applications to the SBA in order to obtain funds through the EIDL program. In particular, in or around March and April 2020, CARTLIDGE fraudulently sought EIDLs in the name of LBRNO and Company 1, both of which were denied. CARTLIDGE also allowed an account under his control to be used for the receipt of fraudulently obtained EIDL funds on behalf of others. Specifically, on or about June 18, 2020, $10,000 in EIDL advance funds were deposited into the LBRNO Account, in connection with a fraudulent EIDL application submitted by McMiller in the name of McMiller Enterprises.

This the 8th day of August, 2021.

Respectfully submitted,

SANDRA J. HAIRSTON
Acting United States Attorney


/S/ MEREDITH C. RUGGLES
Assistant United States Attorney
DC Bar #1020537
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth Street, 4th Floor
Greensboro, NC  27401
Phone:  336/333-5351

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
United States Department of Justice
Criminal Division


/S/ JESSEE ALEXANDER-HOEPPNER
NYSB #4871406
Trial Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:20CR340-2 |
| | : | |
| JOSEPH MARSELL CARTLIDGE | : | |

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2021, I electronically filed the foregoing with the Clerk of the Court under seal using the CM/ECF system, which will send notification of such filing to the following: Bruce Allen Lee, Esq.

        Respectfully submitted,

        SANDRA J. HAIRSTON
        Acting United States Attorney

        /S/ MEREDITH C. RUGGLES
        Assistant United States Attorney
        DC Bar #1020537
        United States Attorney's Office
        Middle District of North Carolina
        101 S. Edgeworth Street, 4th Floor
        Greensboro, NC 27401
        Phone: 336/333-5351